# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3391 | **DATE** | 2/27/2001 |
| **CASE TITLE** | Randol L. Hildebrand vs. William A. Halter | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Having carefully reviewed the entire record upon which the ALJ based his decision, the Court finds that the ALJ's finding that Plaintiff was not disabled for a closed period is supported by substantial evidence. Accordingly, the Commissioner's Motion for Summary Judgment is granted. Plaintiff's Motion for Summary Judgment is denied. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 2 | **Document Number** |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | FEB 28 20 | | |
| | Docketing to mail notices. | | date docketed | | |
| ✓ | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| VKD | courtroom deputy's initials | | 2/27/2001 | | |
| | | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | VKD mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RANDOL L. HILDEBRAND,                    )
                                         )
              Plaintiff,                 )    No. 00 C 3391
                                         )
         v.                              )
                                         )    Magistrate Judge
WILLIAM A. HALTER[1], Acting             )    Arlander Keys
Commissioner of Social Security,         )
                                         )
              Defendant.                 )

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Randol L. Hildebrand, pursuant to 42 U.S.C. §
405(g)(West 2000), moves this Court for summary judgment pursuant
to Rule 56(a) of the Federal Rules of Civil Procedure reversing the
decision of the Commissioner of Social Security ("Commissioner"),
which found that Plaintiff was not entitled to a closed period of
Social Security Disability Insurance Benefits ("DIB").   In the
alternative, Plaintiff moves that this case be remanded to the
Commissioner for further proceedings.  The Commissioner has filed
a Cross-Motion for Summary Judgment in his favor.  For the reasons
set forth below, the Court grants the Commissioner's Motion, and

---

[1] On January 20, 2001, William A. Halter became Acting
Commissioner of Social Security.   In accordance with Fed. R. Civ.
25(d)(1) and the last sentence of 42 U.S.C. § 405(g), William A.
Halter is automatically substituted for Kenneth S. Apfel as the
Defendant in this civil action, and no further action is
necessary to continue this case.

denies Plaintiff's Motion.

## Procedural History

On or about May 8, 1996, Plaintiff applied for DIB alleging disability due to injuries suffered when an automobile, traveling approximately 30-40 miles an hour, struck him (as a pedestrian) on October 28, 1994. (R. at 46-49, 59-61.)[2] After denials at the initial (R. at 34-38) and reconsideration levels (R. 41-43), Plaintiff requested a hearing. (R. at 44.) On April 22, 1997, Plaintiff, who was represented by counsel, appeared before Administrative Law Judge ("ALJ") John L. Mondi. (R. at 203.) On June 27, 1997, the ALJ found that Plaintiff was not disabled because he returned to substantial gainful activity less than twelve months after his alleged disabling injury. (R. at 179-81.)

Plaintiff requested Appeals Council review, and on October 21, 1998, the Appeals Council granted his request, and remanded the case in order for the ALJ to consider it in light of *McDonald v. Bowen*, 800 F.2d 153 (7th Cir. 1986), *amended on reh'g*, 818 F.2d 559 (7th Cir. 1987), Acquiescence Ruling ("AR") 88-3(7), and Social Security Ruling ("SSR") 96-1p. (R. at 186-87.)

---

[2] References are to the certified administrative record prepared by the Commissioner and filed with this Court pursuant to 42 U.S.C. § 405(g).

Accordingly, on January 12, 1999, ALJ Mondi conducted a supplemental hearing where Plaintiff, who was again represented by counsel, and vocational expert, William Schweihs, testified. (R. at 223-59.) On February 23, 1999, ALJ Mondi rendered a second unfavorable decision, finding that a trial work period had not been established, and that Plaintiff could not be found to be disabled because he did not have an impairment that lasted, or was expected to last, for twelve months. (R. at 8-15.)

Plaintiff requested Appeals Council review of the ALJ's decision, primarily contending that the ALJ should have reached the "medical issue" and not denied the case at step one. (R. at 201-02.) On March 31, 2000, the Appeals Council denied his request. (R. at 5-6.) The denial of review left the ALJ's decision as the final decision of the Commissioner. Consequently, Plaintiff seeks judicial review of the Commissioner's final decision, which is the subject of the Motions now before the Court.

## Factual Background

### A. Plaintiff's Injury

As a result of the October 28, 1994 accident, Plaintiff suffered non-displaced posterior neural arch fractures of C7. He also had a fracture dislocation of the right shoulder, right rib fractures, and a 20% right-sided pneumothorax. (R. at 140-41.)

Plaintiff further suffered a comminuted right tibia and fibular fracture, and a tube had to be placed into the right side of his chest. (R. at 98, 100.)

Hospital treatment resulted in a reduction of the right shoulder and the arm was placed in a sling. Post-reduction x-rays showed some avulsion fragments, raising the possibility of a rotator cuff tear. (R. at 102.)

Additionally, Plaintiff underwent a closed reduction of his right leg, which was required to set the tibia and fibula, resulting in a long-leg cast. (R. at 103, 249.) Because of the considerable number of bony fragments which involved an extensive amount of the proximal tibia, the alignment of the leg was accomplished by reduction without surgery. The reduction, however, did not align the leg perfectly. (R. at 103, 230.) Plaintiff also experienced some pain as a result of these injuries.[3] (R. at 152, 157, 234.)

## B. Plaintiff's Testimony at Initial Hearing on April 22, 1997

Plaintiff, born on February 28, 1949, was forty-eight years old as of April 1997, and has a high school education. (R. at 206-07.) He testified that, in October 1994, he was struck by a

---

[3] Doctor's treatment notes, describing Plaintiff's condition and improvement, will be discussed in the body of this opinion.

vehicle, and had to wear a cast on his leg for nine months, and a
back brace for at least three months.  (R. at 210-211.)  Medical
records showed that Plaintiff wore a knee brace until July 1995 and
used a cane until January 15, 1996.  (Id.)  Plaintiff testified
that he used medications for two to three months after he suffered
his accident  (R. at 211), and that, for approximately nine months,
he needed a lot of care from his parents. (R. at 213.)

In April 1995, Plaintiff returned to work as a cutter's
trainee on a "call-in" basis, where he would typically work three
or four hours each day.[4]  (R. at 207.)  Although he worked part-
time, his job duties were the same as they had been prior to the
accident, although he explained that he received a lot of help from
co-workers with respect to lifting.  (R. at 212.)  This "call-in"
arrangement continued for four to six months, and Plaintiff

_____

[4] Plaintiff's past relevant work is that of a cutter or
cutter trainee in the clothing industry.  He worked in
essentially the same capacity for different commercial entities
from about 1968 to 1992 and 1994 until the date of onset, October
28, 1994.  (R. at 63, 207, 212.)  Plaintiff's job could also be
considered a cutter's helper, which consisted of lifting rolls of
cloth onto a machine and requiring Plaintiff to spread the
material out so that a cutter could come by and measure and cut
the material.  (R. at 252.)  The weight of the rolls would range
from 50 to over 100 pounds.  (Id.)  As explained infra, Plaintiff
testified that, when he returned to work in April 1995, he
received help from his co-workers with regard to the lifting.
(R. at 212.)

estimated that he returned to full-time work in the "middle of '95." (R. at 208.) Plaintiff testified that, when he returned to full-time work, he lifted as least 20-30 pounds. (Id.) As of the date of the initial hearing, Plaintiff was still working as a cutter's trainee. (Id.)

At this hearing, the ALJ specifically asked Plaintiff whether there was anything he could think of that would show that he was precluded from working for at least twelve months after his accident. (R. at 214.) Plaintiff responded that his life was different after his accident, and that his broken leg remained crooked, which made it difficult for him to get around. (R. at 214-15.) Plaintiff further testified that, although he had to be on his feet all day because of his job as a fabric cutter, he was allowed to take breaks, and that his supervisor allowed him to sit if needed. (Id.)

Plaintiff's attorney then took him though a chronology of events. (R. at 215.) In sum, the accident occurred on October 28, 1994, and Plaintiff recovered at home until April 1995, when he began to work on a "call-in" basis for two to four months. (R. at 216.) In the summer of 1995, Plaintiff returned to work full-time, but because of slow periods at his job, he did not always work

forty hours a week. (*Id.*) As of April 1995, Plaintiff could lift five to ten pounds, and as of the hearing date, he could lift forty to fifty pounds. (R. at 218.)

## C.    Plaintiff's Testimony at Supplemental Hearing on January 12, 1999

At the beginning of the supplemental hearing, the ALJ read the Appeals Council's remand order and its statement that the ability to return to work within twelve months of the claimant's alleged onset date was not "necessarily a bar to a finding of disability." (R. at 225.)    Plaintiff's attorney then offered an opening statement, where he stated that his client was asking for a closed period of disability that lasted only from the date of his injury, October 28, 1994, through October 28, 1995.[5]  (R. at 227.)

The ALJ proceeded to review some of Plaintiff's previous testimony with him from the initial hearing. Again, the ALJ asked Plaintiff whether he could demonstrate why he was disabled for at least twelve months, and, Plaintiff, consistent with his testimony at the initial hearing, discussed his crooked leg and his inability

_____

[5] At the initial hearing, Plaintiff claimed that his disability ended on March 6, 1996. (R. at 210.)  However, at the supplemental hearing, Plaintiff's attorney claimed a closed period of disability that ended, at the earliest, on October 28, 1995 – one year after the onset date (i.e. the date of the accident).  (R. at 227.)  As will be explained *infra*, not much significance turns on when the closed period supposedly ended.

to perform tasks as quickly as before the accident. (R. at 230.) The ALJ asked whether Plaintiff could identify any milestones in his recovery that were noteworthy, but Plaintiff replied that he could not. (R. at 231.)

As at the initial hearing, Plaintiff's attorney took Plaintiff through a chronology of events that began at the date of the accident on October 28, 1994. (R. at 232.) Plaintiff explained that he wore a leg and knee brace until July 1995, had his arm in a sling for at least four months, and used a cane until at least May 1995. (R. at 232-33.) Plaintiff also testified that he was unable to lift ten pounds when he returned to work, that his co-workers helped him with the lifting, and that his supervisor allowed him to sit, or take breaks, when needed. (R. at 235.)

## D.    Testimony of Vocational Expert at Supplemental Hearing

William Schweihs, the vocational expert ("VE"), requested that the ALJ ask Plaintiff some additional questions about his work, mainly because the amount of pay that Plaintiff apparently received in the summer of 1995 did not seem to be accurate. According to the employer's payroll records (R. at 174-75, submitted by Plaintiff), the amount of money Plaintiff received in 1995 appeared

too high for someone earning eight dollars an hour.[6] (R. at 237-39.) Furthermore, the VE questioned why Plaintiff would receive numerous payments on the same day - or in the same week - as opposed to earnings which are typically paid once a week or bimonthly. (R. at 239.) Accordingly, the ALJ asked Plaintiff whether his pay represented work he actually performed, or sick pay. Plaintiff initially responded that it represented work that he performed (R. at 238), but then, after the VE expressed his concerns, Plaintiff stated that he did not think the earnings information was correct, but found it difficult to contradict his employer. (R. at 240.) Plaintiff's lawyer responded that the accuracy of earnings was largely irrelevant, as Plaintiff would stipulate that he was performing substantial gainful work activity in the summer of 1995.[7] (R. at 242-43.) The ALJ pointed out that, absent any evidence to the contrary, he would assume the earnings records (submitted by Plaintiff) were accurate. (*Id.*)

---

[6] Specifically, the VE commented that it seemed strange that a person who made between seven to thirteen thousands dollars a year between 1992 and the date of his injury in 1994, would make more than that in 1995. (R. at 242.)

[7] As explained *infra*, Plaintiff's lawyer's strategy was to concede that Plaintiff was performing substantial gainful activity in the summer of 1995, but contend that it was a trial work period, and that Plaintiff's impairments were expected to last at least 12 months.

The VE also commented upon the work that Plaintiff performed in 1995, and opined that he did not know whether he would consider it to be substantial gainful activity, given that Plaintiff had to have co-workers help him with lifting and that his supervisor gave him needed breaks. (R. at 253.) The ALJ responded that, at the initial hearing, Plaintiff had claimed that he returned to full-time work in the middle of 1995 (although at the supplemental hearing Plaintiff was claiming he returned to full-time work just before Christmas in 1995), and that the earnings record tended to support the conclusion that Plaintiff returned to work earlier than December 1995. (R. at 253-54.)

## E.    The ALJ's Decision

The ALJ found that Plaintiff suffered severe injuries on October 28, 1994, including a fracture of the right tibia, fibula, right shoulder and right ribs. (R. at 14.) Nonetheless, the ALJ, relying primarily on Plaintiff's testimony at the initial hearing and the earnings record submitted by Plaintiff at the supplemental hearing, found that Plaintiff returned to full-time work in July 1995, after performing part-time work starting in April 1995. (R. at 12-15.)    Furthermore, the ALJ found that, at no time, did Plaintiff present sufficient evidence showing that his impairments were expected to last for more than twelve months. Specifically,

the ALJ found that, at the time Plaintiff returned to work, his condition was gradually improving, and that there was no period when one could conclude, with a reasonable degree of medical certainty, that the claimant's impairments would preclude his engaging in substantial gainful activity ("SGA") for a period of at least twelve months.[8]  (R. at 13.)  Consequently, the ALJ decided that Plaintiff did not meet the duration requirement of the Social Security Act, and accordingly, was not entitled to a closed period of disability.

Significantly, the ALJ specifically addressed the import of McDonald v. Bowen, supra, and AR 88-3(7), for which the Appeals Council had initially remanded the case.  McDonald and the Acquiescence Ruling state that a claimant who returns to SGA before 12 months is not automatically precluded from being disabled. Rather, a claimant who returns to work more than five months after onset, remains entitled to the protection of the trial work provisions of the Social Security Act.  The regulations define a trial work period as a period during which a claimant may test his

---

[8] According to 20 C.F.R. § 404.1505 (West 2001), a disability is the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve months. (Emphasis added.)

ability to work and still be considered disabled. (R. at 13; *see also* 20 C.F.R. § 404.1592 (West 2001).) Nonetheless, the ALJ, after considering all the evidence, found that Plaintiff did not qualify for a trial work period, as Plaintiff had not established that he had an impairment that was expected to result in limitations precluding work for a period of at least twelve months. (R. at 13.)

## Standard of Review

In reviewing the Commissioner's (here the ALJ's) decision, the court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Rather, the court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405 (g)), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron* 19 F.3d at 333 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors his ultimate conclusion. *Id.* Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls

-12-

upon the Commissioner (or ALJ), not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). *See also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). The court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Erhart v. Secretary of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992).

This does not mean that the Commissioner (or ALJ) is entitled to unlimited judicial deference, however. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level and state his reasons for accepting or rejecting "entire lines of evidence," although he need not evaluate in writing every piece of evidence in the record. *See Herron*, 19 F.3d. at 333; *see also Young v. Secretary of Health and Human Services*, 957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review); *Guercio v. Shalala*, No. 93 C 323, 1994 WL 66102, *9 (N.D. Ill. 1994) (ALJ need not spell out every step in his reasoning, provided he has given sufficient direction that the full course of his decision may be

discerned), (citing *Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir. 1988)).

Establishing a disability under the Social Security Act is a two-step process. *Betancourt v. Apfel*. 23 F. Supp.2d 875, 880 (N.D. Ill. 1998). First, the plaintiff must suffer from a medically determinable physical or mental impairment, or a combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. *Id.*; *see also* 42 U.S.C. § 1382c(a)(3)(A)(West 2000). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any SGA. *Id.*

This factual determination concerning SGA is made by using a five-step process:(1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §

404.1520(West 2001); *see also Young, supra*, 957 F.2d at 389. A finding of disability requires an affirmative answer at either step 3 or step 5. A negative answer at any step (other than step 3) precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4, after which the burden shifts to the Commissioner at step 5. *Id.*

## Analysis

The critical inquiry posed by this case is whether the ALJ properly found that Plaintiff's impairments were not expected to last the duration requirement of at least twelve months under the Social Security Act.[9] Indeed, because the ALJ found, at step one of the initial two-step inquiry, that Plaintiff was not disabled, he did not apply the sequential steps concerning SGA. Thus, as

---

[9] Specifically, Plaintiff makes three main arguments in his brief: (1) that the ALJ failed to realize that a return to work before twelve months does not preclude an award of benefits and entitlement to a trial work period; (2) that the ALJ erred by relying on his own medical conclusion rather than analyzing the medical evidence of record, or obtaining assistance from a medical advisor such as Plaintiff's treating physician; and (3) that the ALJ misconstrued the regulation, 20 C.F.R. § 404.1592, governing the trial work period. (*See* Plaintiff's Memorandum in Support of Motion for Summary Judgment at 9-10.) The Court finds that these three arguments, essentially, implicate the same fundamental question: whether there was substantial evidence from which the ALJ could conclude that Plaintiff's impairments were not expected to last for at least twelve months. In answering this question, the Court will address the three specific questions posed by Plaintiff.

Plaintiff points out, the ALJ did not determine the "medical issue." However, if the ALJ's decision - that Plaintiff's impairments were not expected to last for at least twelve months - was properly based on substantial evidence, then he did not need to decide the "medical issue", and was not required to proceed to the next steps in the sequential evaluation. *See, e.g., Murray v. Sullivan*, No. 92-0901, 1993 WL 54198, at * 4 (E.D. La. Feb. 24, 1993)(finding that because the ALJ found that plaintiff's impairment did not meet the duration requirement, he was not required to proceed to the next steps in the sequential evaluation). After carefully reviewing the record in this case, the Court finds that the ALJ's decision was, in fact, based on substantial evidence, and therefore, his decision must be affirmed.

It is well established that it is Plaintiff's burden to prove that his impairments were expected to last for a continuous period of at least twelve months. *See, e.g., Jones v. Bowen*, 699 F. Supp. 693, 698 (N.D. Ill. 1988). Indeed, the relevant regulation states: "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 404.1509 (West 2001). To meet the

duration requirement, the claimant must demonstrate, not simply that his disability prevented him or would prevent him from performing his past relevant work, but rather that his disability prevented him or would prevent him from performing SGA activity for 12 continuous months. *Neal v. Bowen*, 829 F.2d 528, 530-31 (5th Cir. 1987). In sum, the twelve month duration is a "threshold requirement" for a claimant to prove a disability under the Social Security Act. *Pate v. Heckler*, 777 F.2d 1023, 1026 (5th Cir. 1985).

As a preliminary point, the ALJ did not misinterpret AR 88-3(7), SSR 96-1p, and regulation 20 C.F.R. § 404.1592 concerning a trial work period,[10] or misunderstand the significance of *McDonald v. Bowen*, 818 F. 2d 559 (7th Cir. 1986). While the Appeals Council initially remanded the case back to the ALJ for

_____

[10] Regulation § 404.1592 states that a "trial work period is a period during which you may test your ability to work and still be considered disabled." The regulation also provides that "[y]ou are generally entitled to a trial work period if you are entitled to disability insurance benefits . . ." 20 C.F.R. § 404.1592(d)(1). Therefore, as Defendant correctly maintains, the claimant must *already be disabled* to merit a trial work period. The purpose of the trial work period is to allow claimants – who are disabled – a chance to work, without an automatic termination of their disabled status. But, the trial work period is only relevant if a claimant is already considered disabled – which in the case at bar, Plaintiff was not.

-17-

consideration of this authority, on remand, the ALJ properly considered it, and, nonetheless, concluded that Plaintiff still had not met the duration requirement of the Social Security Act. As Defendant aptly points out, *McDonald* (as well as AR 88-3(7)) does not preclude a finding of disability – rather, it merely holds that the ALJ cannot automatically conclude that a claimant is not disabled if the claimant returns to SGA before the expiration of twelve months, because a claimant – *who proves that his impairment is expected to last at least twelve months* – is entitled to a trial work period.[11] But, here, Plaintiff failed to prove that he was entitled to a trial work period, because Plaintiff failed to prove that his impairments were expected to last at least twelve months.

The ALJ based this critical determination on Plaintiff's testimony, the employer's payroll record, and Plaintiff's doctor's treatment notes. Furthermore, the ALJ thoroughly explained his decision, which was based on substantial evidence.

---

[11] Specifically, *McDonald* holds that a "person may return to work after five but before twelve months from the onset of the disability without being penalized. That person, however, must be prepared to show that, at the time she returns to work and thereafter *her disability is still expected to last at least twelve continuous months from its alleged onset date* . . . In this connection, [plaintiff's] return to work pursuant to a trial work period is not in itself any evidence that her disability has ended." 818 F. 2d at 564; (emphasis added).

First, with respect to Plaintiff's testimony and the payroll record, Plaintiff argues that the ALJ erroneously concluded that he was performing SGA in the summer of 1995, based on an inaccurate payroll record,[12] and incorrect testimony that Plaintiff returned to full-time work in July of 1995.[13]  But, puzzling to the Court,

---

[12] Plaintiff insinuates that the ALJ should not have relied on the earnings record, submitted by Plaintiff's employer, to prove that Plaintiff was engaging in SGA in the summer of 1995. The regulations provide that earnings in excess of $500 per month (from July 1999, the amount is $700 per month) create a rebuttable presumption of SGA, such as would disqualify a claimant from receiving social security disability benefits.  20 C.F.R. § 416.974(b)(2)(vii)(West 2001). (The earnings record shows that Plaintiff made more than $500 per month in the summer of 1995. (*See* R. at 175.))  Plaintiff argues that, because the VE questioned the accuracy of the earnings record, and did not feel that Plaintiff's description of his work activity in the summer of 1995 (involving frequent breaks and help from co-workers) constituted SGA, that Plaintiff was not performing SGA within twelve months.  However, Plaintiff's counsel conceded at the supplemental hearing, and by follow-up letter (*see infra*), that the ALJ could assume that Plaintiff was, indeed, performing SGA beginning in July 1995, but that the SGA should be considered a trial work period. (*See* R. at 198, 243.)  Significantly, Plaintiff never submitted a more accurate earnings record (assuming there was one). Therefore, it was reasonable for the ALJ to assume that the earnings record was accurate – despite the VE's reservations – because Plaintiff failed to update, or correct, the allegedly incorrect earnings record that he himself submitted at the supplemental hearing.

[13] At the initial hearing, Plaintiff claimed that he returned to full-time work in July 1995.  But, at the supplemental hearing, Plaintiff claimed that he did not return to full-time work until December 1995. It was reasonable for the ALJ to credit Plaintiff's initial testimony, especially when the

(continued...)

is that Plaintiff's lawyer conceded that his client was performing SGA in the summer of 1995. Furthermore, Plaintiff himself submitted the earnings record (which corroborated that he was performing SGA in the summer of 1995), and did not correct or update it, leaving the ALJ little choice but to conclude that it was accurate. Therefore, it was certainly reasonable - based on the earnings record and Plaintiff's testimony at the initial hearing - for the ALJ to conclude that Plaintiff was performing SGA in the summer of 1995. Moreover, Plaintiff's lawyer's strategy, at the supplemental hearing, was to concede that his client was performing SGA in the summer of 1995, but to, nonetheless, argue that the SGA was part of a trial work period.[14]

---

[13](...continued)
earnings record (submitted by Plaintiff at the supplemental hearing) corroborated that he was working full-time in the summer of 1995. Moreover, although working full-time does not necessarily equate to SGA, Plaintiff's lawyer asked the ALJ to assume that Plaintiff was, indeed, performing SGA in the summer of 1995. (R. at 198, 243.) Therefore, the Court is not going to revisit the question of whether Plaintiff was actually performing SGA in the summer of 1995, even though the VE questioned whether he was, because Plaintiff admitted that he was.

[14] After the supplemental hearing, Plaintiff's lawyer submitted a follow-up letter stating in pertinent part: "However, while [claimant] disputes these numbers [i.e. earnings record], claimant admitted that he performed full-time work at an SGA level beginning July 1, 1995. Consequently, the actual amounts he was paid do not matter to claimant's argument as outlined

(continued...)

However, as explained *supra*, Plaintiff was not entitled to a trial work period, unless he first established that his impairments were expected to last twelve months. Thus, the pivotal question is not whether the ALJ correctly concluded that Plaintiff was performing SGA in the summer of 1995, but rather whether he correctly concluded that Plaintiff's impairments were not expected to last twelve months.

The treatment notes provide evidence that Plaintiff's condition was improving, and that his impairments were not expected to last at least twelve months. A June 9, 1995 treatment note, for instance, stated that Plaintiff had no complaints of pain, that the x-rays showed that the fracture appeared to be healed, and that he could bear weight as tolerated, but should use a cane. Physical therapy was recommended. (R. at 152.) The treatment note, dated September 25, 1995 (approximately 11 months after the accident and onset date), indicated that Plaintiff was doing well, and that he had no complaints of pain. (*Id.*) This note also stated that Plaintiff had an excellent range of motion and strength in his knee, and informed Plaintiff that he should contact the doctor if he encountered any problems. (*Id.*) While this treatment note

---

[14](...continued)
below." (R. at 198.)

further stated that Plaintiff occasionally needed to use a cane, that his range of motion of the shoulder was improving, that therapy was recommended, and that a high tibial osteotomy might be needed to correct a valgus deformity,[15] these facts do not prove that Plaintiff was expected to be impaired from performing SGA for at least another month.    In fact, Plaintiff had already been performing SGA for several months.    "The requirement that an impairment last or be expected to last for a continuous period of twelve months means only that the impairment must be 'a long-term problem and not just a temporary setback'" *McGee v. Bowen*, 647 F. Supp. 1238, 1251 (N.D. Ill. 1986).    Significantly, there were no treatment records from September 25, 1995 through January 15, 1996.[16]    (R. at 227.)    A March 6, 1996 treatment note stated that Plaintiff had no complaints of pain and indicated a good range of motion and good strength in the knee.  (R. at 150.)

Defendant argues that, since the September 25, 1995 treatment note reported virtually the same findings as the one from March 6,

_____

[15] The September 25, 1995 treatment note stated that Plaintiff indicated that he would probably not like to have the osteotomy, because his knee was not giving him problems.  (R. at 152.)

[16] The January 15, 1996 treatment note indicated that the tibial osteotomy would be of no benefit to Plaintiff.  (R. at 152.)

1996, and because Plaintiff acknowledged that he was capable of performing SGA on March 6, 1996,[17] that it was reasonable for the ALJ to conclude that Plaintiff was capable of performing SGA on September 25, 1999. While this might be true, it is irrelevant, because, as explained *supra*, Plaintiff (or his lawyer) conceded that he was performing SGA during the summer of 1995. The only relevant inquiry is whether the treatment notes provide sufficient evidence that Plaintiff's impairments were *expected* to impede his ability to perform SGA for at least twelve months.

According to the regulations, SGA is work activity that involves "doing significant physical or mental activities." 20 C.F.R. § 404.1572 (West 2001). The regulations also provide that working on a part-time basis - or even handling less responsibility - may still be considered "substantial." *Id*. "Gainful work activity" is work activity that is "done for pay or profit, whether or not the profit is realized." *Id*. Plaintiff provides absolutely no medical evidence that his impairments were going to impede his performing "significant physical or mental activities" for at least

_____

[17] March 6, 1996 was the date that Plaintiff initially had claimed (at the first hearing) that the closed period ended. At the supplemental hearing, however, Plaintiff claimed that the closed period ended on October 28, 1995 - exactly one year after the onset date.

twelve months.

In fact, the evidence provides otherwise. Plaintiff was injured on October 28, 1994, and stopped taking pain medication within two months of the date of his injury. (R. at 152.) Indeed, 11 months later, the September 25, 1995 treatment note indicated no complaints of pain. Plaintiff was able to perform part-time (or call-in work) as of April 1995, and returned to full-time work in July 1995. It is Plaintiff's burden to substantiate that his impairments were expected to impede his ability to perform SGA for at least twelve months. It was reasonable for the ALJ to conclude that, based on the evidence, Plaintiff failed to do this, and accordingly, was not entitled to a trial work period, and was not disabled during the closed period of October 28, 1994 to October 28, 1995.

## Conclusion

Having carefully reviewed the entire record upon which the ALJ based his decision, the Court finds that the ALJ's finding that Plaintiff was not disabled for a closed period is supported by substantial evidence. Accordingly,

IT IS HEREBY ORDERED that the Commissioner's Motion for Summary Judgment be, and the same hereby is, granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary

-24-

Judgment be, and the same hereby is, denied.

Dated: February 27, 2001     E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge